1   Dawniell Zavala (State Bar No. 253130)
2   HOLME ROBERTS & OWEN LLP
    560 Mission Street, 25th Floor
3   San Francisco, CA  94105-2994
    Telephone:   (415) 268-2000
4   Facsimile:   (415) 268-1999
    Email:       dawniell.zavala@hro.com
5
6   Attorneys for Plaintiffs,
    WARNER BROS. RECORDS INC.;
7   SONY BMG MUSIC ENTERTAINMENT;
    UMG RECORDINGS, INC.; and
8   ELEKTRA ENTERTAINMENT GROUP INC.

9

10                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
11   _____ DIVISION

12

13   WARNER BROS. RECORDS INC., a Delaware    CASE NO. CV 08 3997
     corporation; SONY BMG MUSIC
14   ENTERTAINMENT, a Delaware general
     partnership; UMG RECORDINGS, INC., a     **MEMORANDUM OF LAW IN SUPPORT**
15   Delaware corporation; and ELEKTRA        **OF APPLICATION FOR LEAVE TO TAKE**
     ENTERTAINMENT GROUP INC., a Delaware     **IMMEDIATE DISCOVERY**
16   corporation,

17
                    Plaintiffs,
18
19        v.

20
     JOHN DOE,
21                  Defendant.

22

23

24

25

26

27

28

---

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY
Case No. _____
#39518 v1

1    **I.    INTRODUCTION**

2          Plaintiffs, record companies who own the copyrights in the most popular sound recordings in

3    the United States, seek leave of the Court to serve limited, immediate discovery on a third party

4    Internet Service Provider ("ISP") to determine the true identity of Defendant, who is being sued for

5    direct copyright infringement.  Without such discovery, Plaintiffs cannot identify the Defendant, and

6    thus cannot pursue their lawsuit to protect their copyrighted works from repetitive, rampant

7    infringement.[1]

8          As alleged in the complaint, the Defendant, without authorization, used an online media

9    distribution system (*e.g.*, a peer-to-peer or "P2P" system) to download Plaintiffs' copyrighted works

10   and/or distribute copyrighted works to the public.  See Declaration of Carlos Linares ("Linares

11   Decl."), ¶ 18 (attached hereto as **Exhibit A**).  Although Plaintiffs do not know the true name of the

12   Defendant,[2] Plaintiffs have identified Defendant by a unique Internet Protocol ("IP") address

13   assigned to the Defendant on the date and at the time of the Defendant's infringing activity.  Id.

14   Additionally, Plaintiffs have gathered evidence of the infringing activities.  Id. ¶¶ 14-15, 19.

15   Plaintiffs have downloaded a sample of several of the sound recordings that Defendant illegally

16   distributed and have evidence of every file that Defendant illegally distributed to the public.  Id.

17         Plaintiffs have identified the ISP that provided Internet access to Defendant by using a

18   publicly available database to trace the IP address for Defendant.  Id. ¶¶ 12, 18.  Here, the ISP is

19   Stanford University ("Stanford").  Id.  When given a Defendant's IP address and the date and time of

20   infringement, an ISP typically can identify the name and address of the Defendant (*i.e.*, the ISP's

21   subscriber) because that information is contained in the ISP's subscriber activity log files.  Id. ¶ 16.[3]

22

23   _____

24   [1] Because Plaintiffs do not currently know the identity of the Defendant, Plaintiffs cannot
     ascertain any of the Defendant's position on this Application.

25   [2] When using a P2P system (*e.g.*, Ares, eDonkey, Gnutella, BitTorrent, or DirectConnect),
     Defendants typically use monikers, or user names, and not their true names.  Linares Decl., ¶ 10.

26   Plaintiffs have no ability to determine a Defendant's true name other than by seeking the information
     from the ISP.  Id. ¶¶ 10, 16.

27   [3] ISPs own or are assigned certain blocks or ranges of IP addresses.  A subscriber gains

28   access to the Internet through an ISP after setting up an account with the ISP.  An ISP then assigns a
     particular IP address in its block or range to the subscriber when that subscriber goes "online."  After

                                                    1

1    Plaintiffs' experience is that ISPs typically keep log files of subscriber activities for only limited

2    periods of time – which can range from as short as a few days, to a few months – before erasing or

3    overwriting the data they maintain. <u>Id.</u> ¶ 25. Plaintiffs alert the ISP to the existence of the copyright

4    claims shortly after identifying the infringing activity and ask the ISP to maintain the log files. In

5    most cases the ISP presents at least some of the information necessary to identify the infringer, but

6    not always. <u>Id.</u>

7          Plaintiffs now seek leave of the Court to serve limited, immediate discovery on Stanford to

8    identify Defendant. Plaintiffs intend to serve a Rule 45 subpoena on Stanford seeking documents,

9    including electronically-stored information, sufficient to identify Defendant's true name, current

10   (and permanent) addresses and telephone number, e-mail address, and Media Access Control

11   ("MAC") address. If Stanford cannot link the IP address to Defendant, Plaintiffs seek all documents

12   and electronically-stored information relating to the assignment of that IP address at the date and

13   time the IP address was used to infringe Plaintiffs' copyrighted sound recordings. Once Plaintiffs

14   learn Defendant's identifying information, Plaintiffs will attempt to contact that Defendant and

15   attempt to resolve the dispute. If the dispute is not resolved and it is determined that it would be

16   more appropriate to litigate the copyright infringement claims in another jurisdiction, Plaintiffs will

17   dismiss the Defendant from the present lawsuit and re-file in the appropriate jurisdiction. Without

18   the ability to obtain the Defendant's identifying information, however, Plaintiffs may never be able

19   to pursue their lawsuit to protect their copyrighted works from repeated infringement. <u>Id.</u> ¶ 23.

20   Moreover, the infringement may be ongoing and computer evidence may be overwritten or

21   destroyed such that immediate relief is necessary. <u>Id.</u> ¶¶ 21, 24. Thus, the need for the limited,

22   immediate discovery sought in this Application is critical.

23   **II.    BACKGROUND**

24         The Internet and P2P networks have spawned an illegal trade in copyrighted works. <u>See</u>

25   <u>MGM Studios Inc. v. Grokster, Ltd.</u>, 545 U.S. 913, 923 (U.S. 2005). By downloading P2P software,

26   and logging onto a P2P network, an individual can upload (distribute) or download (copy), without

27

28   reviewing the subscriber activity logs (which contain the assigned IP addresses), an ISP can identify
     its subscribers by name. <u>See</u> Linares Decl., ¶ 16.

2

1   authorization, countless copyrighted music and video files to or from any other P2P network user

2   worldwide. See id. at 920 (detailing the process used by infringers to download copyrighted works);

3   A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1014 (9th Cir. 2001) (stating that infringers use

4   P2P networks to copy and distribute copyrighted works); Universal City Studios, Inc. v. Reimerdes,

5   111 F. Supp. 2d 294, 331 (S.D.N.Y.), aff'd sub nom., Universal City Studios, Inc. v. Corley, 273

6   F.3d 429 (2d Cir. 2001) (describing a viral system, in which the number of infringing copies made

7   available multiplies rapidly as each user copying a file also becomes a distributor of that file). Until

8   enjoined, Napster was the most notorious online media distribution system. Grokster, 545 U.S. at

9   924. Notwithstanding the Napster Court's decision, similar online media distribution systems

10  emerged that have attempted to capitalize on the growing illegal market that Napster fostered. These

11  include Ares, KaZaA, eDonkey, BitTorrent, DirectConnect, and Gnutella, among others. Linares

12  Decl., ¶ 6. Despite the continued availability of such systems, there is no dispute that the uploading

13  and downloading of copyrighted works without authorization is copyright infringement. Napster,

14  239 F.3d at 1014-15; In re Aimster Copyright Litig., 334 F.3d 643 (7th Cir. 2003), cert. denied, 124

15  S. Ct. 1069 (2004). Nonetheless, at any given moment, millions of people illegally use online media

16  distribution systems to upload or download copyrighted material. Linares Decl., ¶ 6. More than 2.6

17  *billion* infringing music files are downloaded monthly. L. Grossman, *It's All Free*, Time, May 5,

18  2003, at 60-69.

19        The propagation of illegal digital copies over the Internet significantly harms copyright

20  owners, and has had a particularly devastating impact on the music industry. Linares Decl., ¶ 9. The

21  RIAA member companies lose significant revenues on an annual basis due to the millions of

22  unauthorized downloads and uploads of well-known recordings that are distributed on P2P networks.

23  Id. ¶ 9. Evidence shows that the main reason for the precipitous drop in revenues is that individuals

24  are downloading music illegally for free, rather than buying it. See In re Aimster Copyright Litig.,

25  334 F.3d at 645.

26  **III.    ARGUMENT**

27        Courts routinely allow discovery to identify "Doe" defendants. See Wakefield v. Thompson,

28  177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants given possibility that

3

1    identity could be ascertained through discovery); <u>Valentin v. Dinkins</u>, 121 F.3d 72, 75-76 (2d Cir.

2    1997) (vacating dismissal; *pro se* plaintiff should have been permitted to conduct discovery to reveal

3    identity of the defendant); <u>Dean v. Barber</u>, 951 F.2d 1210, 1215 (11th Cir. 1992) (error to deny the

4    plaintiff's motion to join John Doe defendant where identity of John Doe could have been

5    determined through discovery); <u>Munz v. Parr</u>, 758 F.2d 1254, 1257 (8th Cir. 1985) (error to dismiss

6    claim merely because the defendant was unnamed; "Rather than dismissing the claim, the court

7    should have ordered disclosure of the Officer Doe's identity"); <u>Maclin v. Paulson</u>, 627 F.2d 83, 87

8    (7th Cir. 1980) (where "party is ignorant of defendants' true identity . . . plaintiff should have been

9    permitted to obtain their identity through limited discovery").

10        Indeed, in similar copyright infringement cases brought by Plaintiffs, and/or other record

11   companies, against Doe defendants for infringing copyrights over P2P networks, many courts,

12   including this Court, have granted Plaintiffs' motions for leave to take expedited discovery.  <u>See</u>,

13   <u>e.g.</u>, Order, <u>Maverick Recording Co. v. Does 1-4</u>, Case No. C-04-1135 MMC (N.D. Cal. April 28,

14   2004); Order, <u>Arista Records LLC v. Does 1-16</u>, No. 07-1641 LKK EFB (E.D.Cal. Aug. 23, 2007);

15   Order, <u>Sony BMG Music Ent't v. Does 1-16</u>, No. 07-cv-00581-BTM-AJB (S.D. Cal. Apr. 19, 2007);

16   Order, <u>UMG Recordings, Inc. v. Does 1-2</u>, No. CV04-0960 (RSL) (W.D. Wash. May 14, 2004);

17   Order, <u>Loud Records, LLC v. Does 1-5</u>, No. CV-04-0134-RHW (E.D. Wash. May 10, 2004); Order,

18   <u>London-Sire Records, Inc. v. Does 1-4</u>, No. CV 04-1962 ABC (AJWx) (C.D. Cal. Apr. 2, 2004);

19   Order, <u>Interscope Records. v. Does 1-4</u>, No. CV-04-131 TUC-JM (D. Ariz. Mar. 25, 2004) (true and

20   correct copies of these Orders are attached hereto as **Exhibit B**).  This Court should not depart from

21   its well-reasoned decisions, or the well-reasoned decisions of other courts that have addressed this

22   issue directly.

23        Courts allow parties to conduct expedited discovery in advance of a Rule 26(f) conference

24   where the party establishes "good cause" for such discovery.  <u>See UMG Recordings, Inc.</u>, 2006 U.S.

25   DIST. LEXIS 32821 (N.D. Cal. Mar. 6, 2000); <u>Entertainment Tech. Corp. v. Walt Disney</u>

26   <u>Imagineering</u>, No. Civ. A. 03-3546, 2003 WL 22519440, at *4 (E.D. Pa. Oct. 2, 2003) (applying a

27   reasonableness standard); <u>Semitool, Inc. v. Tokyo Electron Am., Inc.</u>, 208 F.R.D. 273, 275-76 (N.D.

28   Cal. 2002); <u>Yokohama Tire Corp. v. Dealers Tire Supply, Inc.</u>, 202 F.R.D. 612, 613-14 (D. Ariz.

4

2001) (applying a good cause standard); Energetics Sys. Corp. v. Advanced Ceramtrics, No. 95-7956, 1996 U.S. Dist. LEXIS 2830, *5-6 (E.D. Pa. March 8, 1996) (good cause standard satisfied where the moving party had asserted claims of infringement). Plaintiffs easily have met this standard.

First, good cause exists where, as here, the complaint alleges claims of infringement. See Interscope Records v. Does 1-14, No. 5:07-4107-RDR, 2007 U.S. Dist. LEXIS 73627, *3 (D. Kan. Oct. 1, 2007) (citations omitted) ("Good cause can exist in cases involving claims of infringement and unfair competition); Energetics Sys. Corp., 1996 U.S. Dist. LEXIS 2830 at *5-6 (good cause standard satisfied where the moving party had asserted claims of infringement); see also Semitool, 208 F.R.D. at 276; Benham Jewelry Corp. v. Aron Basha Corp., No. 97 CIV 3841, 1997 WL 639037, at *20 (S.D.N.Y. Oct. 14, 1997). This is not surprising, since such claims necessarily involve irreparable harm to the plaintiff. 4 Melville B. Nimmer & David Nimmer, Nimmer On Copyright § 14.06[A], at 14-103 (2003); see also Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1034, 1042 (8th Cir. 2003); Health Ins. Ass'n of Am. v. Novelli, 211 F. Supp. 2d 23, 28 (D.D.C. 2002) ("A copyright holder [is] presumed to suffer irreparable harm as a matter of law when his right to the exclusive use of copyrighted material is invaded.") (quotations and citations omitted); ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d 60, 66 (2d Cir. 1996).

Second, good cause exists here because there is very real danger that electronic evidence may be destroyed and the ISP may not long preserve the information that Plaintiffs seek. As discussed above, computer evidence by its very nature is subject to being overwritten. Linares Decl., ¶ 24. Evidence stored on Defendant's computer may be lost as a result of any delay. Moreover, ISPs typically retain user activity logs containing the information sought for only a limited period of time before erasing or overwriting the data. Linares Decl., ¶ 25. If that information is erased, Plaintiffs will have *no* ability to identify the Defendant, and thus will be unable to pursue their lawsuit to protect their copyrighted works. Id. Where "physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation," good cause for expedited discovery exists. Interscope Records, 2007 U.S. Dist. LEXIS 73627 at *3 (citation omitted); see also Metal Bldg. Components, L.P. v. Caperton, CIV-04-1256 MV/DJS, 2004 U.S.

5

1  Dist. LEXIS 28854, *10-11 (D.N.M. April 2, 2004) ("Good cause is frequently found . . . when

2  physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging

3  one or more parties to the litigation.") (citation omitted); Pod-Ners, LLC v. Northern Feed & Bean,

4  204 F.R.D. 675, 676 (D. Colo. 2002) (allowing the plaintiff expedited discovery to inspect "beans"

5  in the defendant's possession because the beans might no longer be available for inspection if

6  discovery proceeded in the normal course).

7          Third, good cause exists because the narrowly tailored discovery requests do not exceed the

8  minimum information required to advance this lawsuit and will not prejudice Defendant. See

9  Semitool, 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in

10  consideration of the administration of justice, outweighs the prejudice to the responding party.").

11  Plaintiffs seek immediate discovery to identify the Defendant; information that may be erased very

12  soon. Plaintiffs (who continue to be harmed by Defendant's copyright infringement, Linares Decl., ¶

13  9), cannot wait until after the Rule 26(f) conference (ordinarily a prerequisite before propounding

14  discovery) because there is no known defendant with whom to confer (and thus, no conference is

15  possible). There is no prejudice to Defendant because Plaintiffs merely seek information to identify

16  Defendant and to serve him or her, and Plaintiffs agree to use the information disclosed pursuant to

17  their subpoenas only for the purpose of protecting their rights under the copyright laws. See Metal

18  Bldg. Components, L.P., 2004 U.S. Dist. LEXIS 28854 at *12 (where "the requested discovery is

19  relevant and will be produced in the normal course of discovery," the court was "unable to discern

20  any prejudice or hardship to Defendant" if discovery is conducted "on an expedited basis.").

21          Fourth, courts regularly grant expedited discovery where such discovery will "substantially

22  contribute to moving th[e] case forward." Semitool, 208 F.R.D. at 277. Here, the present lawsuit

23  cannot proceed without the limited, immediate discovery Plaintiffs seek because there is no other

24  information Plaintiffs can obtain about Defendant without discovery from the ISP. As shown by the

25  Declaration of Carlos Linares, Plaintiffs already have developed a substantial case on the merits

26  against the infringer. Plaintiffs' complaint alleges a *prima facie* claim for direct copyright

27  infringement. Plaintiffs have alleged that they own and have registered the copyrights in the works

28  at issue, and that Defendant copied or distributed those copyrighted works without Plaintiffs'

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY
Case No._____
#39518 v1

1  authorization. <u>See</u> Complaint. These allegations state a claim of copyright infringement. <u>Nimmer</u>

2  <u>On Copyright</u> § 31.01, at 31-3 to 31-7; <u>Feist Publications, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340,

3  361 (1991). In addition, Plaintiffs have copies of a sample of several of the sound recordings that

4  Defendant illegally distributed to the public and have evidence of every file that Defendant illegally

5  distributed to the public. <u>See</u> Complaint Ex. A; Linares Decl., ¶¶ 18-19. This more complete list

6  shows 1331 files, many of them sound recordings (MP3 files) that are owned by, or exclusively

7  licensed to, Plaintiffs. <u>See</u> Linares Decl., ¶ 19. Plaintiffs believe that virtually all of the sound

8  recordings have been downloaded and/or distributed to the public without permission or consent of

9  the respective copyright holders. <u>Id.</u> Absent limited, immediate discovery, Plaintiffs will be unable

10  to obtain redress for any of this infringement.

11      Finally, Plaintiffs request that the Court make clear that Stanford is authorized to respond to

12  the subpoena pursuant to the Family Educational Rights and Privacy Act, 20 U.S.C. 1232g (

13  "FERPA"). Though FERPA generally prohibits disclosure of certain records by federally-funded

14  educational institutions, it *expressly* provides that information can be disclosed pursuant to court

15  order. *See* 20 U.S.C. § 1232g(b)(2)(B). While Plaintiffs do not believe FERPA prevents the

16  disclosure of the information requested in the subpoena,[4] universities and colleges have expressed

17  concern about their obligations under FERPA, and some have taken the position that a court order is

18  required before they will disclose subscriber information. Hence, Plaintiffs seek an appropriate

19  order explicitly authorizing Stanford to comply with the subpoena under 20 U.S.C. §

20  1232g(b)(2)(B).

21      If the Court grants this Application, Plaintiffs will serve a subpoena on Stanford requesting

22  documents that identify the true name and other information about the Defendant within 15 business

23  days. Stanford then will be able to notify its subscribers that this information is being sought, and

24  Defendant will be able to raise any objections before this Court in the form of a motion to quash

25

26

---

27      [4] Plaintiffs do not concede that FERPA prevents Stanford University, from disclosing the

28  type of information being requested by Plaintiffs, but believe that a properly framed court order will make resolution of that issue unnecessary.

7

1  prior to the return date of the subpoena. Thus, to the extent that Defendant wishes to object, he or

2  she will be able to do so.

3  **IV.       CONCLUSION**

4            For the foregoing reasons, the Court should grant the Application and enter an Order

5  substantially in the form of the attached Proposed Order.

6

7  Dated:  August 21, 2008                          HOLME ROBERTS & OWEN LLP

8

9                                                   By  _Dawniell Zavala_

10                                                      DAWNIELL ZAVALA
                                                        Attorney for Plaintiffs
11                                                      WARNER BROS. RECORDS INC.; SONY
                                                        BMG MUSIC ENTERTAINMENT; UMG
12                                                      RECORDINGS, INC.; and ELEKTRA
                                                        ENTERTAINMENT GROUP INC.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY
Case No._____
#39518 v1

1   Dawniell Zavala (State Bar No. 253130)
    HOLME ROBERTS & OWEN LLP
2   560 Mission Street, 25th Floor
    San Francisco, CA  94105-2994
3   Telephone:   (415) 268-2000
    Facsimile:   (415) 268-1999
4   E-mail: dawniell.zavala@hro.com

5   Attorney for Plaintiffs
    WARNER BROS. RECORDS INC.; SONY
6   BMG MUSIC ENTERTAINMENT; UMG
    RECORDINGS, INC.; and ELEKTRA
7   ENTERTAINMENT GROUP INC.

8

9                          UNITED STATES DISTRICT COURT

10                       NORTHERN DISTRICT OF CALIFORNIA

11  WARNER BROS. RECORDS INC., a Delaware       Case No. _____
    corporation; SONY BMG MUSIC
12  ENTERTAINMENT, a Delaware general           DECLARATION OF CARLOS
    partnership; UMG RECORDINGS, INC., a        LINARES IN SUPPORT OF
13  Delaware corporation; and ELEKTRA           APPLICATION FOR LEAVE TO
    ENTERTAINMENT GROUP INC., a Delaware        TAKE IMMEDIATE DISCOVERY
14  corporation,,

15                 Plaintiff,
          v.
16
    JOHN DOE,
17
                   Defendant.
18

19

20

21

22

23

24

25

26

27

28

1    I, Carlos Linares, have personal knowledge of the facts stated below and, under

2    penalty of perjury, hereby declare:

3         1.    I am an attorney and Vice President, Anti-Piracy Legal Affairs for the

4    Recording Industry Association of America, Inc. ("RIAA"), where I have been employed for

5    over six years. My office is located at 1025 F Street, N.W., 10th Floor, Washington, DC 20004.

6    I submit this Declaration in support of Plaintiffs' Application for Leave to Take Immediate

7    Discovery.

8         2.    As Vice President, Anti-Piracy Legal Affairs, I am responsible for

9    evaluating and contributing to online strategies for the RIAA and its member record companies

10   who are Plaintiffs in this action, including oversight of the investigations into online

11   infringement of copyrighted sound recordings. As such, this Declaration is based on my

12   personal knowledge, and if called upon to do so, I would be prepared to testify as to its truth and

13   accuracy.

14   **The RIAA's Role in Protecting Its Member Recording Industry Companies From Copyright Infringement**

15        3.    The RIAA is a not-for-profit trade association whose member record

16   companies create, manufacture, and/or distribute approximately ninety percent of all legitimate

17   sound recordings produced and sold in the United States. The RIAA's member record

18   companies comprise the most vibrant national music industry in the world. A critical part of the

19   RIAA's mission is to assist its member companies in protecting their intellectual property in the

20   United States and in fighting against online and other forms of piracy. All of the Plaintiffs in this

21   action are members of the RIAA.

22        4.    As part of that process, the RIAA, on behalf of its members, retains a

23   variety of services from outside vendors to assist with its investigation of the unauthorized

24   reproduction and distribution of copyrighted sound recordings online.

25   **The Internet and Music Piracy**

26        5.    The Internet is a vast collection of interconnected computers and computer

27   networks that communicate with each other. It allows hundreds of millions of people around the

28

1   world to communicate freely and easily and to exchange ideas and information, including

2   academic research, literary works, financial data, music, movies, graphics, and an unending and

3   ever-changing array of other data.  Unfortunately, the Internet also has afforded opportunities for

4   the wide-scale piracy of copyrighted sound recordings and musical compositions.  Once a sound

5   recording has been transformed into an unsecured digital format, it can be copied further and

6   distributed an unlimited number of times over the Internet, without significant degradation in

7   sound quality.

8           6.      Much of the unlawful distribution of copyrighted sound recordings over

9   the Internet occurs via "peer-to-peer" ("P2P") file copying networks or so-called online media

10   distribution systems.  The most notorious example of such a system was Napster, which was

11   enjoined by a federal court.  Notwithstanding the court's decision enjoining Napster, similar

12   online media distribution systems emerged and attempted to capitalize on the growing illegal

13   market that Napster fostered.  These include KaZaA, eDonkey, iMesh, Ares, BitTorrent,

14   DirectConnect, and Gnutella, among others.  To this day, some P2P networks continue to operate

15   and to facilitate widespread copyright piracy.  At any given moment, millions of people illegally

16   use online media distribution systems to upload or download copyrighted material.

17           7.      P2P networks, at least in their most popular form, refer to computer

18   systems or processes that enable Internet users to:  (1) index  files (including audio recordings)

19   into a share directory on a computer that are then searched for and transferred to other users; (2)

20   search for files stored on other users' computers; (3) transfer exact copies of files from one

21   computer to another via the Internet; and (4) allow users to further distribute the files to other

22   users.  P2P networks enable users who otherwise would have no connection with, or knowledge

23   of, each other to offer to each other for distribution and copying files off of their personal

24   computers, to provide a sophisticated search mechanism by which users can locate these files for

25   downloading, and to provide a means of effecting downloads.

26           8.      The major record companies generally have not authorized their

27   copyrighted sound recordings to be copied or distributed in unsecured formats by means of P2P

28

2

1   networks. Thus, the vast majority of the content that is copied and distributed on P2P networks

2   is unauthorized by the copyright owner – that is, the distribution violates the copyright laws.

3          9.     The scope of online piracy of copyrighted works cannot be

4   underestimated. The RIAA member companies lose significant revenues on an annual basis due

5   to the millions of unauthorized downloads and uploads of well-known recordings that are

6   distributed on P2P networks by infringers who, in virtually all cases, have the ability to maintain

7   their anonymity to all but the Internet Service Provider ("ISP") they use to supply them with

8   access to the Internet.

9          10.    The persons who commit infringements by using the P2P networks are, by

10   and large, anonymous to Plaintiffs. A person who logs on to a P2P network is free to use any

11   alias (or computer name) whatsoever, without revealing his or her true identity to other users.

12   Thus, Plaintiffs can observe the infringement occurring on the Internet, but do not know the true

13   names or mailing addresses of those individuals who are committing the infringement.

**The RIAA's Identification of Copyright Infringers**

14          11.    In order to assist its members in combating copyright piracy, the RIAA

15   retained a third party, MediaSentry, Inc. ("MediaSentry"), to conduct searches of the Internet, as

16   well as file-copying services, for infringing copies of sound recordings whose copyrights are

17   owned by RIAA members. A search can be as simple as logging onto a P2P network and

18   examining files being distributed by others logged onto the network. In gathering evidence of

19   copyright infringement, MediaSentry uses the same functionalities that are built into P2P

20   programs that any user of the software can use on the network.

21          12.    Users of P2P networks who distribute files over a network can be

22   identified by using Internet Protocol ("IP") addresses because the unique IP address of the

23   computer offering the files for distribution can be captured by another user during a search or a

24   file transfer. Users of P2P networks can be identified by their IP addresses because each

25   computer or network device (such as a router) that connects to a P2P network must have a

26   unique IP address within the Internet to deliver files from one computer or network device to

27   another. Two computers cannot effectively function if they are connected to the Internet with the

28   

3

1   same IP address at the same time.  In some cases, more than one computer can access the internet

2   over a single IP address by using network address translation, in which cases the computer port

3   being used provides further identification of the computer engaged in the on-line

4   communication.  This is analogous to the telephone system where each location has a unique

5   number (and the port acts much like a specific telephone extension off the main switch board).

6   For example, in a particular home, there may be three or four different telephones, but only one

7   call can be placed at a time to or from that home.  Each computer or network device is connected

8   to a network that is administered by an organization like a business, ISP, college, or university.

9   Each network, in turn, is analogous to an area code.  The network provider maintains a log of IP

10  address allocations.  An IP address can be associated with an organization such as an ISP,

11  business, college, or university, and that organization can identify the P2P network user

12  associated with the specified IP address.

13          13.     MediaSentry finds individuals using P2P networks to share music files

14  over the Internet.  Just as any other user on the same P2P networks as these individuals would be

15  able to do, MediaSentry is able to detect the infringement of copyrighted works and identify the

16  users' IP addresses because the P2P software being used by those individuals has file-sharing

17  features enabled.

18          14.     For each suspected infringer, MediaSentry downloads a number of the

19  music files that the individual is offering to other users on the P2P network.  Those music files

20  for each such individual are listed in Exhibit A to the Complaint.  MediaSentry assigns an

21  identification number to each individual for which it detects copyright infringement and gathers

22  additional evidence for each individual, such as metadata accompanying each file being

23  disseminated that demonstrates that the user is engaged in copyright infringement.  That

24  evidence includes download data files that show for each music file the source IP address, user

25  logs that include a complete listing of all files in the individual's share folder at the time, and

26  additional data that track the movement of the files through the Internet.

27          15.     After MediaSentry collects the evidence of infringement, the RIAA

28  engages in a painstaking process to verify whether each individual was infringing.  That process

relies on human review of evidence supporting the allegation of infringement. For each suspected infringer, the RIAA reviews a listing of the music files that the user has offered for download by others from his or her computer in order to determine whether they appear to be copyrighted sound recordings. The RIAA also listens to the downloaded music files from these users in order to confirm that they are, indeed, copies of sound recordings whose copyrights are owned by RIAA members. Exhibit A to the Complaint lists the details of these downloaded music files. In my role as Vice President, Anti-Piracy, I provide oversight over the review of the lists contained in Exhibit A to the Complaint and hereby attest to the veracity of those lists. The RIAA also reviews the other evidence collected by MediaSentry.

### The Subpoena Process to Identify Copyright Infringers

16.    The RIAA frequently has used the subpoena processes of Federal Rule of Civil Procedure 45 to obtain the names of infringers from ISPs. The RIAA typically has included in their subpoenas to ISPs an IP address and a date and time on which the RIAA, through its agent, MediaSentry, observed use of the IP address in connection with allegedly infringing activity. In some instances, providing the IP address alone to the ISP has been enough to enable the ISP to identify the infringer. Providing the date and time further assists some ISPs in identifying infringers, especially ISPs that use "dynamic IP addressing" such that a single computer may be assigned different IP addresses at different times, including, for example, each time it logs into the Internet.[1] Some ISPs also ask for the computer port information to further identify the infringer. Once provided with the IP address, plus the date and time of the infringing activity, the infringer's ISP can typically identify the computer from which the infringement occurred (and the name and address of the subscriber that controls that computer), sometimes within a matter of minutes.

17.    Since 1998, the RIAA and others have used subpoenas thousands of times to learn the names, addresses, telephone numbers, and e-mail addresses of infringers for the purpose of bringing legal actions against those infringers.

---

[1] ISPs own or are assigned certain blocks or ranges of IP addresses. An ISP assigns a particular IP address in its block or range to a subscriber when that subscriber goes "online."

5

## The RIAA's Identification of the Infringers in This Case

18.    In the ordinary course of investigating online copyright infringement, the RIAA became aware that Defendant was distributing files to others on various P2P networks. The user-defined author and title of the files being distributed by Defendant suggested that many were copyrighted sound recordings being disseminated without the authorization of the copyright owners. The RIAA downloaded and listened to a representative sample of the music files being distributed by Defendant and was able to confirm that the files Defendant was distributing were illegal copies of sound recordings whose copyrights are owned by RIAA members. The RIAA also recorded the time and date at which the infringing activity was observed and the IP address assigned to Defendant at the time. See Complaint Exhibit A. The RIAA could not, however, determine the physical location of the users or their identities. The RIAA could determine that Defendant was using Stanford University internet service to distribute the copyrighted files.

19.    The RIAA also has collected for Defendant a list of the files Defendant was distributing to the public. The list shows 1331 files, many of which are sound recording (MP3) files that are owned by, or exclusively licensed to, Plaintiffs. Because of the voluminous nature of the list, and in an effort not to overburden the Court with paper, I have not attached the list to this Declaration. The list will be made available to the Court upon request. Exhibit A to the Complaint includes the username of the infringer if that was available, the identification number assigned by MediaSentry for the Defendant, and the number of audio files that were being shared by Defendant at the time that the RIAA's agent, MediaSentry, observed the infringing activity.

## The Importance of Expedited Discovery in This Case

20.    Obtaining the identity of copyright infringers on an expedited basis is critical to stopping the piracy of the RIAA members' copyrighted works.

21.    First, every day that copyrighted material is disseminated without the authorization of the copyright owner, the copyright owner is economically harmed. Prompt identification of infringers is necessary in order for copyright owners to take quick action to stop unlawful dissemination of their works and minimize their economic losses.

6

22. Second, infringement often occurs with respect to sound recordings that have not yet been distributed publicly. Such infringement inflicts great harm on the initial market for new works. New recordings generally earn a significant portion of their revenue when they are first released, and copyright piracy during a recording's pre-release or early release period therefore deprives copyright owners of an important opportunity to reap the benefits of their labor.

23. Third, without expedited discovery, Plaintiffs have no way of serving Defendant with the complaint and summons in this case. Infringement occurs without name tags so Plaintiffs do not have Defendant's name or address, nor do they have an e-mail address for Defendant.

24. Fourth, computer evidence by its very nature is subject to being overwritten. At times, Plaintiffs have sought evidence from defendants' computers only to find that the evidence of infringement was destroyed (intentionally or unintentionally). Expedited discovery is critical to allow Plaintiffs to put Defendants on notice of the need to preserve the electronic evidence and avoid the loss of evidence.

25. Fifth, ISPs have different policies pertaining to the length of time they preserve "logs" which identify their users. ISPs keep log files of their user activities for only limited periods of time – which can range from as short as a few days, to a few months – before erasing or overwriting the data they maintain. If an ISP does not respond expeditiously to a discovery request, the identification information in the ISP's logs may be erased, making it impossible for the ISP to determine the identity of the infringer and eliminating the copyright owner's ability to take action to stop the infringement. The RIAA notifies the ISPs when it has identified infringement for which it will seek identifying information and requests the ISPs to preserve the information. In most cases the ISPs preserve at least some of the information necessary to identify the infringer, but not always. Some ISPs have indicated they will preserve the information for a limited time.

7

1        I declare under penalty of perjury under the laws of the United States that the foregoing is

2  true and correct.

3        Executed on _August 8_____, 2008 in Washington, D.C.

4

5                                 _____

6                                 Carlos Linares

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  JEFFREY G. KNOWLES (State Bar # 129754)
   JULIA D. GREER (State Bar # 200479)
2  ZUZANA J. SVIHRA (State Bar # 208671)
   COBLENTZ, PATCH, DUFFY & BASS, LLP
3  One Ferry Building, Suite 200
   San Francisco, California 94111
4  Telephone: (415) 391-4800
   Facsimile:  (415) 989-1663
5
   Attorneys for Plaintiffs
6  MAVERICK RECORDING CO.; WARNER BROS.
   RECORDS INC.; ARISTA RECORDS, INC.; VIRGIN
7  RECORDS AMERICA, INC.; UMG RECORDINGS, INC.;
   INTERSCOPE RECORDS; BMG MUSIC; SONY MUSIC
8  ENTERTAINMENT INC.; ATLANTIC RECORDING
   CORP.; MOTOWN RECORD COMPANY, L.P.; and
9  CAPITOL RECORDS, INC.

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                SAN FRANCISCO DIVISION

13  MAVERICK RECORDING COMPANY, a          CASE NO. C-04-1135 MMC
    California joint venture; WARNER BROS.
14  RECORDS INC., a Delaware corporation;   [PROPOSED] ORDER GRANTING
    ARISTA RECORDS, INC., a Delaware        PLAINTIFFS' MISCELLANEOUS
15  corporation; VIRGIN RECORDS AMERICA,    ADMINISTRATIVE REQUEST FOR
    INC., a California corporation; UMG     LEAVE TO TAKE IMMEDIATE
16  RECORDINGS, INC., a Delaware            DISCOVERY
    corporation; INTERSCOPE RECORDS, a
17  California general partnership; BMG MUSIC,
    a New York general partnership; SONY
18  MUSIC ENTERTAINMENT INC., a
    Delaware corporation; ATLANTIC
19  RECORDING CORPORATION, a Delaware
    corporation; MOTOWN RECORD
20  COMPANY, L.P., a California limited
    partnership; and CAPITOL RECORDS, INC.,
21  a Delaware corporation,

22              Plaintiffs,

23        vs.

24  DOES 1 - 4,

25              Defendants.

26

27

28

COBLENTZ, PATCH, DUFFY & BASS, LLP
One Ferry Building, Suite 200, san francisco, ca 94111-4213
(415) 391-4800  •  (415) 989-1663

_____
                              [PROPOSED] ORDER

1    Upon the Miscellaneous Administrative Request of Plaintiffs For Leave To Take

2    Immediate Discovery, the Declaration of Jonathan Whitehead and the exhibit thereto, Plaintiffs'

3    Request for Judicial Notice, and the Declaration of Zuzana J. Svihra, it is hereby:

4    ORDERED that Plaintiffs may serve immediate discovery on the University of

5    California, Berkeley to obtain the identity of each Doe Defendant by serving a Rule 45 subpoena

6    that seeks information sufficient to identify each Doe Defendant, including the name, address,

7    telephone number, e-mail address, and Media Access Control addresses for each Defendant.

8    IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in

9    response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting

10   Plaintiffs' rights under the Copyright Act.

11   Without such discovery, Plaintiffs cannot identify the Doe Defendants, and thus

12   cannot pursue their lawsuit to protect their copyrighted works from infringement.

13

14   Dated:___April 28, 2004_____          James Larson U.S. Magistrate Judge

15                                              ~~United States District Judge~~

16

17

18

19

20

21

22

23

24

25

26

27

28

COBLENTZ, PATCH, DUFFY & BASS, LLP
One Ferry Building, Suite 200, san francisco, ca 94111-4213
(415) 391-4800  •  (415) 989-1663

1  Matthew Franklin Jaksa (CA State Bar No. 248072)
   HOLME ROBERTS & OWEN LLP
2  560 Mission Street, 25th Floor
   San Francisco, CA  94105-2994
3  Telephone:  (415) 268-2000
   Facsimile:  (415) 268-1999
4  Email:       matt.jaksa@hro.com
5
6  Attorneys for Plaintiffs,
   ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION;
7  BMG MUSIC; CAPITOL RECORDS, INC.; ELEKTRA
   ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE
8  RECORDS LLC; MAVERICK RECORDING COMPANY; MOTOWN
   RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY BMG
9  MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN
   RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC.
10
                    UNITED STATES DISTRICT COURT
11                  EASTERN DISTRICT OF CALIFORNIA
12
   ARISTA RECORDS LLC, a Delaware limited liability          CASE NO. 07-1641 LKK EFB
13 company; ATLANTIC RECORDING
   CORPORATION, a Delaware corporation; BMG              ORDER GRANTING EX PARTE
14 MUSIC, a New York general partnership; CAPITOL        APPLICATION FOR LEAVE TO TAKE
   RECORDS, INC., a Delaware corporation; ELEKTRA        IMMEDIATE DISCOVERY
15 ENTERTAINMENT GROUP INC., a Delaware
   corporation; INTERSCOPE RECORDS, a California
16 general partnership; LAFACE RECORDS LLC, a
   Delaware limited liability company; MAVERICK
17 RECORDING COMPANY, a California joint venture;
   MOTOWN RECORD COMPANY, L.P., a California
18 limited partnership; PRIORITY RECORDS LLC, a
   California limited liability company; SONY BMG
19 MUSIC ENTERTAINMENT, a Delaware general
   partnership; UMG RECORDINGS, INC., a Delaware
20 corporation; VIRGIN RECORDS AMERICA, INC., a
   California corporation; and WARNER BROS.
21 RECORDS INC., a Delaware corporation,
                              Plaintiffs,
22
23            v.
24 DOES 1-16,
25                       Defendants.
26
27
28

[Proposed] Order Granting Ex Parte Application for Leave to Take Immediate Discovery
Case No.
#31640 v1

1          Upon the Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery,

2    the Declaration of Carlos Linares, and the accompanying Memorandum of Law, it is hereby

3    ORDERED that Plaintiffs may serve immediate discovery on University of California, Davis to

4    obtain the identity of each Doe Defendant by serving a Rule 45 subpoena that seeks documents that

5    identify each Doe Defendant, including the name, current (and permanent) addresses and telephone

6    numbers, e-mail addresses, and Media Access Control addresses for each Defendant.

7          Although parties must generally meet and confer prior to seeking expedited

8    discovery, that requirement may be dispensed if good cause is shown. *See* Fed. R. Civ. P. 26(d);

9    *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002).   Here, the

10   plaintiffs have presented evidence that the subpoena is necessary to identify the defendants, serve

11   them with the complaint and summons, and prosecute their claims of copyright infringement. *See*

12   *Gillespie v. Civletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("where the identity of alleged defendants

13   will not be known prior to the filing of a complaint . . . . the plaintiff should be given an opportunity

14   through discovery to identify the unknown defendants, unless it is clear that discovery would not

15   uncover the identities, or that the complaint would be dismissed on other grounds.").   Plaintiffs have

16   further averred that records kept by internet service providers ("ISP") such as the University of

17   California, Davis, are regularly destroyed, sometimes on a daily or weekly basis. *See* Linares

18   Declaration, at ¶ 24.   Based on the foregoing, the court finds that plaintiffs have demonstrated good

19   cause for the expedited discovery.

20          The disclosure of this information is ordered pursuant to 20 U.S.C. § 1232g(b)(2)(B).

21   Consistent with that provision, if and when the University of California, Davis is served with a

22   subpoena, it shall, within five business days, give written notice to the subscribers whose identities

23   are to be disclosed in response to the subpoena.   Such written notice may be achieved by messages

24   sent via electronic mail.   If the University of California, Davis, and/or any defendant wishes to move

25   to quash the subpoena, they shall do so before the return date of the subpoena.

26

27

28

---

1

[Proposed] Order Granting Ex Parte Application for Leave to Take Immediate Discovery
Case No.
#31640 v1

1         IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in

2 response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting

3 Plaintiffs' rights under the Copyright Act.

4

5 Dated: _____    August 23, 2007.

6                                EDMUND F. BRENNAN

7                                UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

FILED

2007 APR 23  PM 1:19

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SONY BMG MUSIC ENTERTAINMENT, a
Delaware general partnership; UMG
RECORDINGS, INC., a Delaware corporation;
ARISTA RECORDS LLC, a Delaware limited
liability company; CAPITOL RECORDS, INC., a
Delaware corporation; WARNER BROS.
RECORDS INC., a Delaware corporation;
INTERSCOPE RECORDS, a California general
partnership; PRIORITY RECORDS LLC, a
California limited liability company; ATLANTIC
RECORDING CORPORATION, a Delaware
corporation; FONOVISA, INC., a California
corporation; MAVERICK RECORDING
COMPANY, a California joint venture; MOTOWN
RECORD COMPANY, L.P., a California limited
partnership; ELEKTRA ENTERTAINMENT
GROUP INC., a Delaware corporation; BMG
MUSIC, a New York general partnership; VIRGIN
RECORDS AMERICA, INC., a California
corporation; and LAFACE RECORDS LLC, a
Delaware limited liability company,

          Plaintiff,

    v.

DOES 1 - 16,

          Defendants.

Case No. 07CV 0581 BTM    AJB

[PROPOSED] ORDER GRANTING
PLAINTIFFS' *EX PARTE*
APPLICATION FOR LEAVE TO
TAKE IMMEDIATE DISCOVERY

1

1     Upon the Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery, the

2  Declaration of Carlos Linares, and the accompanying Memorandum of Law, it is hereby:

3     ORDERED that Plaintiffs may serve immediate discovery on SBC Internet Services, Inc. to

4  obtain the identity of each Doe Defendant by serving a Rule 45 subpoena that seeks documents that

5  identify each Doe Defendant, including the name, current (and permanent) addresses and telephone

6  numbers, e-mail addresses, and Media Access Control addresses for each Defendant. The disclosure

7  of this information is ordered pursuant to 47 U.S.C. § 551(c)(2)(B).

8     IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in response to the

9  Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting Plaintiffs' rights under

10  the Copyright Act.

11

12  DATED:   *-4-19-07*           By: _____
                                      United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

04-CV-00960-IFP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

UMG RECORDINGS, INC., a Delaware
corporation; ATLANTIC RECORDING
CORPORATION, a Delaware corporation;
WARNER BROS. RECORDS INC., a
Delaware corporation; SONY MUSIC
ENTERTAINMENT INC., a Delaware
corporation; BMG MUSIC, a New York
general partnership; and VIRGIN
RECORDS AMERICA, INC., a California
corporation,

        Plaintiffs,

    v.

DOES 1 - 2,

        Defendants.

No. C04- 0960(c)-L

[PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTION FOR LEAVE TO
TAKE IMMEDIATE DISCOVERY

19    Upon the Motion of Plaintiffs for Leave to Take Immediate Discovery and the

20  supporting Memorandum of Law, and the declaration of Jonathan Whitehead and the

21  exhibit thereto, it is hereby:

22    ORDERED that Plaintiffs may serve immediate discovery on Microsoft Corporation

23  to obtain the identity of each Doe Defendant by serving a Rule 45 subpoena that seeks

24  information sufficient to identify each Doe Defendant, including the name, address,

25  telephone number, e-mail address, and Media Access Control addresses for each Defendant.

26

[PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTION FOR LEAVE TO
TAKE IMMEDIATE DISCOVERY
Page 1

YARMUTH WILSON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE, WA 98104
T 206 516 3800  F 206 516 3888

1          IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in

2    response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of

3    protecting Plaintiffs' rights under the Copyright Act.

4

5    Dated: _____May 14, 2004_____          _____M.S. Casmir_____

6                                                    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

[PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTION FOR LEAVE TO
TAKE IMMEDIATE DISCOVERY
Page 2

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE, WA 98104
T 206 516 3800  F 206 516 3888

1

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAY 1 0 2004

JAMES R. LARSEN, CLERK
DEPUTY
SPOKANE, WASHINGTON

2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7  LOUD RECORDS, LLC, a
8  Delaware corporation; WARNER
   BROS. RECORDS INC., a
9  Delaware corporation; ATLANTIC
   RECORDING CORPORATION, a
10 Delaware corporation; VIRGIN
   RECORDS AMERICA, INC., a
11 California corporation; PRIORITY
   RECORDS LLC, a California
12 limited liability company;
   ELEKTRA ENTERTAINMENT
13 GROUP INC., a Delaware
   corporation; BMG RECORDINGS,
14 INC, a Delaware corporation;
   ARISTA RECORDS, INC., a
15 Delaware corporation; BMG
   MUSIC, a New York general
16 partnership; SONY MUSIC
   ENTERTAINMENT INC., a
17 Delaware corporation; MAVERICK
   RECORDING COMPANY, a
18 California joint venture; and
   CAPITOL RECORDS, INC., a
19 Delaware corporation,

20        Plaintiffs,
          v.
21 DOES 1-5,
22        Defendants.
23

NO.  CV-04-0134-RHW

**ORDER GRANTING PLAINTIFFS'
MOTION FOR LEAVE TO TAKE
IMMEDIATE DISCOVERY**

24
25    Before the Court is Plaintiffs' Motion for Leave to Take Immediate
26 Discovery (Ct. Rec. 7).  The Plaintiffs, members of the Recording Industry
27 Association of America, Inc. ("RIAA"), have filed a complaint alleging that DOES
28

ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO TAKE
IMMEDIATE DISCOVERY * 1

1  1-5 illegally engaged in uploading and downloading copyrighted recordings

2  through www.KaZaA.com, a peer to peer ("P2P") internet service (Ct. Rec. 1).

3  While Plaintiffs are unable to identify the Does, they collected records of

4  Defendants' Internet Protocol ("IP") address, the times the downloads or uploads

5  took place, and information regarding the specific recordings that were

6  downloaded or uploaded.  The Plaintiffs were able to ascertain from Defendants'

7  IP addresses that they were utilizing Gonzaga University as their Internet Service

8  Provider ("ISP").  Plaintiffs seek statutory damages under 17 U.S.C. § 504(c),

9  attorneys fees and costs pursuant to 17 U.S.C. § 505, and injunctive relief under

10  17 U.S.C. §§ 502 and 503.

11       In their Motion for Leave to Take Immediate Discovery, the Plaintiffs seek

12  leave to serve Gonzaga University, the ISP for Does 1-5, with a Rule 45 Subpoena

13  Duces Tecum, requiring Gonzaga University to reveal the Defendant's names,

14  addresses, email addresses, telephone number, and Media Access Control

15  ("MAC") addresses.

16       The Ninth Circuit has held that "where the identity of alleged defendants

17  will not be known prior to the filing of a complaint . . . . the plaintiff should be

18  given an opportunity through discovery to identify the unknown defendants,

19  unless it is clear that discovery would not uncover the identities, or that the

20  complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d

21  637, 642 (9th Cir. 1980).  Presumably, the discovery device anticipated by this

22  ruling was Rule 45, under which a party may compel a nonparty to produce

23  documents or other materials that could reveal the identities.  *See Pennwalt Corp.*

24  *v. Durand-Wayland, Inc.*, 708 F.2d 492 (9th Cir. 1983).  The Court finds that this

25  instance presents the very situation indicated by *Gillespie*.  The Plaintiffs' case

26  relies on the disclosure of the Does' identities, and those identities are likely

27  discoverable from a third party.

28       Under Rule 26(d), Rule 45 subpoenas should not be served prior to a Rule

ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO TAKE
IMMEDIATE DISCOVERY * 2

1 26(f) conference unless the parties can show good cause.  Fed. R. Civ. P. 26(d) ("a

2 party may not seek discovery from any source before the parties have conferred as

3 required by Rule 26(f) . . . . [u]nless the court upon motion . . . . orders

4 otherwise"); *see Semitool, Inc. V. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-

5 76 (N.D. Cal. 2002).  The Plaintiffs have presented compelling evidence that the

6 records kept by ISP providers of IP addresses are regularly destroyed.  Thus, good

7 cause has been shown.

8   Accordingly, **IT IS ORDERED** that:

9   1. Plaintiffs' Motion for Leave to Take Immediate Discovery (Ct. Rec.

10 7) is **GRANTED.**

11   2. Plaintiffs are **GIVEN LEAVE** to serve immediate discovery on

12 Gonzaga University to obtain the identity of each Doe Defendant by serving a

13 Rule 45 subpoena duces tecum that seeks each Doe Defendants' name, address,

14 telephone number, email address, and Media Access Control address.  As agreed

15 by Plaintiffs, this information disclosed will be used solely for the purpose of

16 protecting their rights under the copyright laws.

17   3. Plaintiffs are **ORDERED** to review Local Rule 7.1(g)(2) regarding the

18 citation of unpublished decisions.  All unpublished decisions cited to the Court

19 have been disregarded.

20   **IT IS SO ORDERED.** The District Court Executive is hereby directed to

21 enter this order and to furnish copies to counsel of record.

22   **DATED** this __10__ day of May, 2004.

23

24

25     ROBERT H. WHALEY
      United States District Judge

26

27 Q:\Civil\2004\Loud Records\Loud.immediatediscovery.order.wpd

28

ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO TAKE
IMMEDIATE DISCOVERY * 3

Received 04/02/2004 04:25PM in 01:28 from 213 894 1815 to  on line [7]  .· FAX3 * Pg 2/3
04/02/04  FRI 17:22 FAX 213 894 1815        U.S DISTRICT COURT                    ☑002

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

CIVIL MINUTES - GENERAL

Case No. CV 04-1962 ABC (AJWx)                Date: April 2, 2004

Title: LONDON-SIRE RECORDS, INC., et. al., v. DOES 1-4
================================================
PRESENT:

HON. ANDREW J. WISTRICH, MAGISTRATE JUDGE

Ysela Benavides
Deputy Clerk                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:
None Present                            None Present

## ORDER REGARDING PLAINTIFFS' EX PARTE APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY

Plaintiffs are thirteen record companies who have filed a lawsuit against four unnamed "doe" defendants for alleged copyright infringement. Plaintiffs filed a motion for leave to take immediate discovery on March 23, 2004. [Notice of Ex Parte Application for Leave to Take Immediate Discovery ("Notice") filed March 23, 2004]. Plaintiffs allege that defendants, using an online peer-to-peer ("P2P") media distribution system, made available for distribution, and in fact distributed, copyrighted songs without license or other authority to do so, thereby infringing plaintiffs' copyrights. [See Memorandum of Law in Support of Ex Parte Application For Leave to Take Immediate Discovery ("Memorandum") filed March 23, 2004, at 2]. Plaintiffs have acquired the Internet Protocol ("IP") addresses assigned to each of the four defendants on the dates and times of the infringing activity. [Memorandum 2]. Using a public database, plaintiffs determined that the subject IP addresses belong to the University of Southern California ("USC"). [Memorandum 2-3]. As an Internet Service Provider ("ISP"), USC maintains a subscriber activity log indicating which of its subscribers were assigned the IP addresses in question on the relevant dates and times. [Memorandum 3]. In plaintiffs' experience, most ISPs maintain subscriber activity logs for only a short period of time before destroying the information contained in the logs. [Memorandum 3]. From the subscriber logs, USC can use the IP addresses and temporal information provided by plaintiffs to identify the true names, street addresses, phone numbers, e-mail addresses, and Media Access Control ("MAC") addresses for each defendant. [Memorandum 3]. Plaintiffs ask this Court to allow immediate issuance of a subpoena directing USC to produce defendants' names and the other personal information described above so that plaintiffs may contact defendants in an attempt to negotiate a resolution to plaintiffs' claims, or failing that, to add defendants as named parties to this litigation.

Received 04/02/2004 04:25PM in 01:28 from 213 894 1815 to  on line [7] .or FAX3 * Pg 3/3
04/02/04  FRI 17:22 FAX 213 894 1815          U.S DISTRICT COURT                                    ☑003

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES--GENERAL

Generally, parties must meet and confer prior to seeking expedited discovery. See Fed. R. Civ. P. 26(f). That requirement, however, may be dispensed with if good cause is shown. See Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 275-76 (N.D. Cal. 2002). Plaintiffs have shown good cause. The true identities of defendants are unknown to plaintiffs, and this litigation cannot proceed without discovery of defendants' true identities. [See Memorandum 7-9].

Subject to the following qualifications, plaintiffs' ex parte application for leave to take immediate discovery is granted.

If USC wishes to file a motion to quash the subpoena or to serve objections, it must do so before the return date of the subpoena, which shall be no less than twenty-one (21) days from the date of service of the subpoena. Among other things, USC may use this time to notify the subscribers in question.

USC shall preserve any subpoenaed information or materials pending compliance with the subpoena or resolution of any timely objection or motion to quash.

Plaintiffs must serve a copy of this order on USC when they serve the subpoena.

Any information disclosed to plaintiffs in response to the Rule 45 subpoena must be used by plaintiffs solely for the purpose of protecting plaintiffs' rights under the Copyright Act as set forth in the complaint.


**IT IS SO ORDERED.**


cc:    Parties

Received 03/30/2004 09:44AM in 02:06 on line [11] for RHARRIS * Pg 2/3

```
                                              ┌─────────────────────────┐
                                              │ ___/ FILED ___ .LODGED   │
1                                             │ ___ RECEIVED ___ .COPY   │
                                              │                          │
2                                             │                          │
                                              │     MAR 3 0 2004          │
3                                             │                          │
                                              │  CLERK U S DISTRICT COURT │
4                                             │   DISTRICT OF ARIZONA     │
                                              │ BY_____ DEPUTY │
5                                             └─────────────────────────┘
```

6                      UNITED STATES DISTRICT COURT

7                          DISTRICT OF ARIZONA

8    Interscope Records, et al.,               )
                                               )   No. CV-04-131 TUC - JM
9                        Plaintiffs,           )
                                               )
10   v.                                        )   **ORDER**
                                               )
11   Does 1 - 4,                               )
                                               )
12                                             )
                        Defendants.            )
13                                             )

14         Pending before the Court is the Plaintiffs' *ex parte* Motion for Leave to Take

15   Immediate Discovery [Docket No. 2]. Upon consideration of the Motion and the supporting

16   Memorandum of Law, and the declaration of Jonathan Whitehead and the exhibit attached

17   thereto, it is hereby:

18         ORDERED that Plaintiffs' Motion for Leave to Take Immediate Discovery [Docket

19   No. 2] is GRANTED;

20         IT IS FURTHER ORDERED that Plaintiffs may serve immediate discovery on the

21   University of Arizona to obtain the identity of each Doe Defendant by serving a Rule 45

22   subpoena that seeks information sufficient to identify each Doe Defendant, including the

23   name, address, telephone number, e-mail address, and Media Access Control addresses for

24   each Defendant;

25         IT IS FURTHER ORDERED that any information disclosed to Plaintiffs in response

26   to the Rule 45 subpoena shall be used by Plaintiffs solely for the purpose of protecting

27   Plaintiffs' rights under the Copyright Act as set forth in the Complaint;

28

1        IT IS FURTHER ORDERED that, if and when the University of Arizona is served

2 with a subpoena, within five (5) business days thereof it shall give written notice, which can

3 include use of e-mail, to the subscribers whose identities are to be disclosed in response to

4 the subpoena.  If the University of Arizona and/or any Defendant wishes to move to quash

5 the subpoena, they shall do so before the return date of the subpoena, which shall be twenty-

6 five (25) business days form the date of service;

7        IT IS FURTHER ORDERED that, if and when the University of Arizona is served

8 with a subpoena, the University of Arizona shall preserve the data and information sought

9 in the subpoena pending resolution of any timely filed motion to quash;

10        IT IS FURTHER ORDERED that counsel for Plaintiffs shall provide a copy of this

11 Order to the University of Arizona when the subpoena is served.

12        Dated this _2.5__ day of March, 2004.

13

14

15

16                  JACQUELINE MARSHALL

                  UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

                 2